Good morning, Your Honors. May it please the Court, my name is Dan McGuire, and I'm here to represent the Appellants, Hartford, and the Epson Plain. I would like to reserve three minutes for rebuttal. There are two issues presented to the panel today. First, whether the District Court properly converted the standard of review to de novo. And second, whether, under any standard of review, the District Court's finding that Ms. Hicklin was a manager and therefore entitled to a $5,000 a month disability benefit was error. I would like to first address the standard of review. The policy in this case contains discretionary language. However, the District Court converted the standard of review to de novo, sua sponte. No one argued for a de novo standard in the briefs. The conversion was based on perceived substantive claims irregularities and violations by Hartford. This, we contend, was error. In the Abadi case, the Ninth Circuit authorized conversion to de novo from arbitrary and capricious, only in a very rare class of cases. Those cases where the administrator committed flagrant and wholesale procedural violations that were so significant that they altered the substantive relationship between the employer and the employee. So what do we do with the District Court's findings of fact that that was, in fact, what occurred here? Are you arguing that they're clearly erroneous? The findings of fact are erroneous in terms of the application of a de novo standard of review, and this Court should reverse on that basis. So is this a factual question or a legal question? To the extent he converted to de novo based on other than gross procedural violations is a legal question. Right, but he found the gross procedural violations. That's not really where I really think the problem is, though, in this case, so I'll get to where I think the problem is. In Abadi, we also held that where there's a structural conflict, that is, where the insurance company both administers the plan and also pays out under the plan, then we review the case with a degree of healthy skepticism, depending on the presence or not of a variety of other factors. And so given that and given the factual findings that Judge Fease did make, wouldn't that be the standard of review in this case? The standard of review would be deferential. The amount of deference applied by the District Court judge may vary based on the factors Your Honor just described, but in no event would it be a de novo review in the absence of these types of procedural violations which are present only in a rare class of cases. Is it your view that even if the District Court is correct in finding the gross procedural violations, that that still wouldn't qualify as a narrow category of cases applying de novo review? In other words, in contesting de novo review, are you also contesting the judge's findings, or are you willing to accept them and still say there's no de novo review? In both, Your Honor. We contest the judge's findings, and we say that even if those judge's findings are accurate, that that part of Abadi which converts to de novo review does not survive Metropolitan Life v. Coins. I understand those two positions. I guess I'm asking about a third, which is assume that de novo review survives Metropolitan Life and assume that the district judge is correct in the findings of procedural violations. Would that make this case the sort of case where de novo review would apply? Yes, because if the judge finds and supports with the record flagrant and wholesale procedural violations and Abadi survives Metropolitan Life v. Coins on that issue, then de novo review would be appropriate. But it's our position here, Your Honor, as we've explained, that we have two challenges to that. One is that there are no gross wholesale procedural violations that are identified by the court or supported by the record. And the basis for that argument is as follows. The court, as you know, issued a statement of intended decision in which it took the conversion of standard of review to de novo to respond to. I would have expected to see in the statement of decision, if that was the case, some mention or comment to that effect, particularly on the point that there was procedural gross procedural violations. I would have expected to see a recitation of such violation. But in the statement of intended decision, there was no mention at all of any procedural violations, much less gross procedural violations. Instead, the procedural violations only surfaced in the findings that were prepared by plaintiff's counsel. And even there, in the judge in reviewing those proposed findings crossed out at ER 29 that portion of the reference to egregious wholesale and flagrant violations. If he had indeed intended to hold that there were such violations, they would have first been mentioned in the statement of intended decision, and second, he wouldn't have crossed them out when plaintiff prepared the findings and submitted them to the court for review. And even in the findings, it's only after a two-page recitation of these claims handling perceived violations, these substantive violations, that any procedural violations at all were mentioned. And this gets back to Judge Mostyn's point earlier. Why are we challenging the factual findings by the court of these procedural violations? Well, there are four that are outlined and discussed in the brief. The first is the alleged refusal of Hartford to produce handwritten notes during the claims process. It seems clear that that was a misunderstanding of the terminology of the letter that was in dispute. There are no handwritten claims notes. It's a paperless system. Hartford keeps their claims notes on a computer. That's why there are 40 or 50 pages of those computer notes in the record. The second procedural violation was the failure to produce surveillance tapes. There wasn't a failure to produce them. It was only a 60-day delay because the record was sent to counsel, and then Hartford realized that the surveillance tape was kept in a different file called the SIU file, and then once that was figured out, it was sent to the surveillance tape. Besides, the termination decision and the uphold wasn't based on the surveillance at all. Third, it was the failure to consider post-appeal documents. Now, that's not a violation at all because, as this court held in the Silver case, this constant going back and forth, unending circle of point and counterpoint, which would be the result of considering post-appeal submissions, would lead to interminable delay and would be against the procedure under ERISA for expedience of resolution. And then finally, there's the allegation that there was a failure to put the attending physician's response to the peer reviewer's notes or report, rather, into the record. And as the court may recall, Hartford, as one of two peer reviews during the appeal, has sent these reports to the attending physician for comment. The attending physician interlineated some comments on one of the notes, and the plaintiff argued that, well, if that wasn't in the record, why not? You're hiding it. Well, there's no evidence in the record that that was ever sent to Hartford. There's no evidence in the record that it was ever sent to anyone. There's no transmittal letter. There's no fax header. There's no addressee. There's no evidence in the record at all that that was even in Hartford's record. I think what he emphasizes, and Dutchby seemed to be very careful, and I gather this was a submitted proposed order, that he crossed out some parts and left in some parts and wrote in others. But he, I mean, he states both in the intended decision and in the ultimate decision that the record plainly establishes that Hicklin suffers from severe and debilitating conditions, and she's had numerous surgeries. And so he starts out at a point where he's saying, this woman is disabled. And then he goes from there, and he says Hartford ignored, in its processing of her claim, Hartford ignored the obvious, come the record, taken selective evidence out of context as a pretext to deny Hicklin's claim. Hartford's file review ignored the great weight of the evidence supporting Hicklin's claim. In addition, Hartford attacked her character, and the file is filled with objective data establishing significant structural abnormalities. Are you saying that all those findings, because he didn't use the words wholesale and flagrant, aren't findings of wholesale and flagrant procedural irregularities? And there's more. I'm just not going to waste everybody's time reading them all out. He does use the word gross, gross procedural violations. The part of the decision that you just read, Your Honor, does outline substantive violations. So let's define our terms. What's the difference between a substantive violation and a procedural violation? Substantive violations are the types of things that the Court just recited. Well, he's saying that they engage in gross. The part I read about gross procedural comes after that. But he's saying substantively, Hartford should have covered Hicklin. And there were gross procedural violations of its statutory obligations under ERISA that led it not to cover Hicklin. Well, I would disagree with Your Honor because I think what you just read are substantive violations. Well, I read the substantive part that goes to his conclusion that she is, in fact, disabled within the meaning of the policy. And then, in addition, later on he says that the Court also notes Hartford engaged in gross procedural violations and goes through those. Well, the procedural violations, Your Honor, as in the meaning of a baby, is procedural violations on the ERISA statute, for example, failure to comply with time deadlines, failure to decide a claim on appeal, failure to notify the claimant of a right to pursue a case in federal court. The things that Your Honor just described were violations that the Court found and how Hartford reached its decision and how it handled the claim. And those are substantive violations, not procedural violations. What's your point on the manager issue? Thank you, Your Honor. It's our position on the manager issue that no matter what standard of review is applied, the district court erred in finding that she was a manager covered by 5,000 monkey. There's supposedly two plans here, one for managers and one for non-managers? Well, that's what we think. There's no plan in the record on a $5,000 benefit. There's some talk in the claimant's. That's what the confusion in my mind is. The non-managers plan doesn't define managers. Is that right? That's right. So you'd expect if there was something around that dealt with managers, that would tell you what a manager is. That's right. That's missing. That's right. How is that explained? Because I think if Ms. Hicklin, well, nobody ever submitted the $5,000 policy. If Ms. Hicklin had received the summary plan description, which all employees do, when she was hired, she would have had that. If she was a manager, she would have had a $5,000. Well, why didn't you submit it so we'd know what a manager is? Right, that was my next question too. Because that doesn't apply. What doesn't apply? The $5,000 policy doesn't apply because it only applies to managers. Well, then don't you put that in there? Is there a definition there of a manager that would exclude her? I actually have never seen that. You've never seen it? Never seen it. That strikes me as unusual. Why have you never seen it? The plan documents are kept by the plan administrator, Epson, and nobody ever got it from Epson. Do you have the right to get it from Epson? Sure. But you didn't do it? Didn't do it. You're claiming she's not a manager. Not a manager. And you don't know what the manager plan says. I'm sorry, we don't know what the manager plan says, Your Honor, but we do know that she's not a manager because Epson said that she's not a manager and gave us a whole list of reasons why she wasn't. And it's their determination. The summary point on this is that Epson is the employer, that Epson is the plan administrator, that they select coverage for the employees, they classify them as managerial versus non-managerial. They have no skin in the game. It's not going to cost them any more because ARPA is paying the benefits to classify her as a manager as opposed to a non-manager. So the fact that this $5,000 policy is not in the record is not the determination of the fact. Does Epson have a contract with you to administer this plan and pay out the benefits? Yes, Your Honor. Okay, so that's their skin in the game. Well, it's not going to cost them any more. They do have some skin in the game. I mean, in fact, it's irrelevant whether they do or they don't, but I know the conversation you're referring to. Okay, Your Honor, I'm about a minute short of my time. I'd like to reserve the rest. It seems curious to me. You're here to tell us that the district court erred in concluding and finding that she was a manager. Correct, Your Honor. But we don't have the manager plan. Correct, Your Honor. It strikes me as unusual. Because it doesn't apply, and the response here on this record. I'd like to see it to tell whether it applies or not. So the district court didn't have that in front of it at all? No. Correct, Your Honor. Thanks. Thank you. Good morning, Your Honors. Lisa Cantor on behalf of Terry Hicklin and Ms. Hicklin is in the courtroom this morning. I'd like to start by saying I did submit a supplemental authority with the Anderson case, which I think disposes of the issue of whether the standard of review after Glenn can be changed to DeNovo. This opinion does say that when there are gross procedural irregularities in a plan where there's a conflicted administrator, we go to the DeNovo standard of review. And I think, Justice Cott, you wrote that. What are the procedural irregularities here that you would call gross? Okay. Now, we all know that an arresta fiduciary has to provide a full and fair review to a plan beneficiary. So here is what Judge Fies found. Hartford returned documents that were submitted by Ms. Hicklin during the appeal. They didn't consider these documents. Can I stop you there for just a moment? What document are you referring to? I'm referring to a batch of documents that her lawyer submitted as part of the appeal on April 17th. She submitted a batch of documents on April 17th, 2006, and they were returned to her lawyer saying we're not going to consider them. Why? Because they unilaterally decided that they were closing the file on April 20th, and they returned the whole batch of documents. On April 7th, her lawyer also submitted another batch of documents. They decided those documents, Judge Fies found, were irrelevant because those documents were related to the time period that she was being paid benefits in 05. So you're saying all this returning of documents amounted in some way to the denial of a full and fair hearing? Exactly. They decided that the April 7th documents were irrelevant because they related to the time period when she was being paid benefits. However, at the same time, they were asking their reviewing documents to give an opinion as to disability during 05. Can I go back to the April 17th documents? So if I understand it, the process closes and the documents come in after they've closed. You say unilaterally closed the appeal. I'm not sure, first of all, what you mean by unilaterally. I mean, when they make their decision, then it's over. That's always unilateral, isn't it? Well, let me back up. Don't back up too far. I want to stick with the 17th. The way an appeal is supposed to work, there's a time period when you're supposed to decide it. So Harvard actually decided this appeal on February 9th, 2006. But they had decided this appeal based on an opinion of a Dr. Barry Turner, who decided that... I'm familiar with how that record plays out. So then they decide they're going to reopen it, because they're not even comfortable with their own doctor's decision. They reopen it twice. They reopen it, and we're going to give ourselves 90 days to re-decide this appeal. So they tell her that on February 28th, 2006. Maybe I can ask my question a little bit more in the abstract. I'm sorry. So eventually the process does close. Right, but they just... I haven't gotten to my question yet. Sorry. You know, if you wait until the question is finished, we'll be able... I'm sorry. So eventually the process closes. And at that point, you may have arguments about whether it should or shouldn't have closed. So that's why I want to keep it in the abstract. If documents come in after it closes, where's the procedural violation in saying, the decision has been made, we're returning what you submitted after the decision was made? There is no procedural violation if the claim is properly closed. There is a procedural violation when you're unilaterally opening and closing and opening and closing. Explain to me what you mean by unilaterally. When you're opening, when Hartford is opening a file to decide, to look at selective documents that it thinks is going to bolster a denial, rather than... Well, here Hartford, as you say, unilaterally opens it a couple of times on materials your client submitted. And then at some point closes it. Let's talk about April 17th again. When that's closed, I assume you mean something pejorative by unilateral. And I guess I'm missing what you mean. Are they supposed to hold a hearing to decide whether it's time to close the appeal? Or can they just decide to close the appeal? Well, they are supposed to decide an appeal based on all of the documentation in the record. And then when they've done that, they close the appeal. They decide it, and they close it, and they give you your right to file a lawsuit, correct? And isn't it always unilateral when they close the appeal? Yes, it is always unilateral if they have done a full and fair review. So now you're using substantive violations to create a procedural violation. No, what I'm saying is that if they have disregarded documents that have been submitted by the claimant that are in their records, that is a procedural violation. And that's what they've done. Even if those are submitted after the appeal is closed? No, if they disregarded them while the appeal is open. So if they're submitted after the appeal is closed, is that a procedural violation or not?  All right. Thank you. And I'm saying that this appeal was open by their own records until April 20, 2006, and that there are records that they had in their possession until April 20, 2006, which were submitted by Ms. Hicklin, which they refused to consider. Isn't your real argument that the district court found something nefarious about the way in which this closure took place? Is there at least some suspicion, I guess, as best I can tell from the record, that it was quickly closed in order to avoid considering this document or batch of documents? I think the district court found something nefarious about the entire way this was conducted from beginning to end. I like to just hold one thought in my head at a time. So is that true about the April 17th batch of documents? Did the district court make some finding regarding a suspicious manner of closing the appeal just prior to receiving these documents? Yes, because they were received on the same day the final letter came out. And when the claim file was produced, it was produced without these records. In other words, a claim administrator can say, we received these documents too late. We did not consider them. But we have them, and they are in our record. But we properly did not consider them because they were too late. But returning them, there's something nefarious the district court found about that, because that seems to indicate we never had them. We give them back. We never had them. You either stand on it was improper to produce them, they're too late in the procedure. We stand on our procedure. But returning them, the district court found something nefarious. I think what the district court found more nefarious was the secreting of the notes on appeal. Mr. McGuire said there were no notes on appeal. The district court found as a matter of fact there were notes on appeal, and they were not produced. Now, the first question that was asked to Mr. McGuire is what's the standard here? The standard is clear error on the factual findings of Judge Feese to support the gross procedural violations. And there was no challenge in the opening brief to those factual findings on a clear error standard. And Abatey makes that clear. So to support his gross procedural violation finding, this court would have to find clear error on those factual findings that Judge Feese made. As to the issue of Judge Feese's final findings affecting conclusions of law, I agree with the court. You know, he carefully went through what was proposed by counsel. There were many, many changes in here. And there is a finding of gross procedural violations after a very clear finding of many things that he found that was wrong with the way that Hartford had handled this. I think I've read enough Ninth Circuit opinions on submission of findings of fact and conclusions of law by the victor to have concluded that it's a stretch that the Ninth Circuit will ever call that a careful review. It's pretty much a seriously frowned-on procedure, isn't it? It's a frowned-on procedure to wholesale adopt what a counsel puts in. It doesn't change the standard of review, but it makes it a more, I think the phraseology is more skeptical review of what the findings are. But here we have a statement of intended decision, which clearly states I'm not saying everything that I want to see in the final findings of fact, and some pretty careful review of what's submitted. Did the district court determine that she was entitled to benefits under a plan that he never read? Yes. Can you explain that? I can, I hope. I'm distracted by that, so I'd be interested in your explanation. When the trial began, he raised that point. And counsel for Hartford agreed that there's no definition anywhere before the court of what a manager is. There's no definition before the court anywhere? Of what a manager is. Before the court, right. Yes. Okay. And that we're going to have to look at other evidence to see of whether she is a manager, whether she would qualify as a manager, because the certificate does not define a manager, which isn't surprising, Your Honor, because it doesn't insure managers. Right. She wouldn't have the plan. The plan would be maintained by her company, and it strikes me as odd that Hartford doesn't have the plan. I mean, because two contracting parties to the plan should have the plan. I mean, the individual person who is the beneficiary doesn't have it. They have a plan summary, maybe. Ms. Hicklin asked Hartford for the plan, and her lawyer asked Epson for the plan, and she was told, you're not defined under the manager plan, so you can't have the manager plan. Is that in the record? Yes, it is. Where is it in the record? Epson refused to give her attorney the plan at ER 387 to 389. Was there any attempt to subpoena the plan? There was not. And Hartford refused to give the plan at ER 252. I'm sorry. Hartford tells her attorney that, you know, you're not covered under this plan at 252 to 253. And Hartford keeps telling her. Is that a transcript of a hearing, or what is that that you're reading from? I don't have it in front of me. I'm sorry. 387 to 389 is a letter from Epson to Hicklin's attorney. This is when she's saying, your client is not a manager, and she's enclosing a chart saying she's not a manager, and so we're not giving you the manager policy. And we understand you have the non-manager policy, and that's the only policy you're going to get. Did it concern you at all to go in front of the district court to argue that your client's a manager with no definition of manager? Well, it wasn't me, but it would have concerned me greatly. But I think one thing we have to understand is that although Hartford has argued here that the issue of manager is in their discretion, in fact, they just deferred to Epson. If you look in the record, when the issue of manager came before Hartford, Hartford concluded she was a manager, because they did an employability analysis on two different occasions and concluded that she was a manager. They got the dictionary of titles, and they equated her job with a manager. And when they approved the claim, they approved her with a $5,000 gross monthly benefit. Now, the reason that sort of gets hidden is because they took all these offsets, and so she never really got her gross monthly benefit. And when it finally came time to take those offsets off is when they first informed her, oh, no, we've decided you're not a manager. At the time that they decided that she was a manager and did the dictionary of title determination, they already had the manager description from Epson. So when they, quote, exercised their discretion on the issue, they had full information from Epson. Then when it came time to take the offsets off, they went back to Epson. Epson says, no, we told you she's not a manager. So they completely deferred to Epson at that point, of course, because it served their self-interest not to pay her the full $5,000 a month. So this is at ER 334 to 337 is where they conclude that she can perform the requirements of any occupation, and every occupation they list is a manager. Right. And at 360, attached to that, they list her current occupation at the very top, her current occupation at job lead as project lead equates in the dictionary of titles to a manager position. So every time they did exercise their discretion on the issue, they conclude she's a manager. But at those points, it was actually serving their interests in two ways. One, it supported their finding that she was not disabled, and two, it also supported finding that she didn't have to pay out. Correct. There are no further questions, I suppose. Well, I have another question. I mean, suppose we were to decide that Judge Peace shouldn't have applied the de novo review, would we remand to have him apply the body healthy skepticism standard? I think that if you find enough in the record to affirm his ruling on the abuse of discretion standard, you can affirm. If you feel that there's not enough in the record, then I think Ms. Hicklin's entitled to a Nolan hearing. To a what hearing? To a Nolan hearing, a hearing under Nolan on the abuse of discretion standard. I'm sorry. Nolan is the hearing that says that she can put in her conflict evidence, because he never did do the conflict analysis. Well, it's kind of there. It's there. I agree it's there. Look, our position is there's enough in this record. I don't think he's going to reach a different decision. No, he suggested that he might reach a different decision. When he crossed out the part that was submitted that said under either standard, he crossed that out. He could have easily said under either standard, she wins, and he deliberately crossed that out. I think he was just saying, I haven't performed that analysis. Because if you look at the record at ER-2, where he's awarding attorney's fees, which is after the judgment, he says that one of the reasons for awarding attorney's fees is the strength of the claim, and he says that Hartford ignored obvious medical conditions, combed the record to take selective evidence out of context as a pretext to deny. The fee award would deter Hartford from repeating such disingenuous claim analysis in the future, and in turn would benefit all members under the claim, under the claim. So you say that's irreconcilable with the idea that he might have approved it. Yeah. Under the different standard. Right. So I don't see him changing his mind under an abusive discretion standard. But my point is that this Court can affirm on any basis. But I think under Nolan, there's no basis for entering judgment in favor of Hartford because the plaintiff is entitled to a hearing on her conflict evidence, and she hasn't had that because he specifically said he wasn't performing that analysis. All right. Thank you, counsel. Counsel, I think you have some time left for rebuttal. Thank you, Your Honors. Just briefly, with regard to this notion that the $5,000 manager policy is not in the record, I think sometimes in ERISA cases we get consumed with the basic law that the administrative record consists of all documents that the administrator considers in reaching its decision, and that the scope of the court's review is limited to the administrative record. And here, after a full investigation, Hartford determined, based primarily on the information from the best source available, the employer Epson, that she was not a manager. Did you determine a couple of times that she was? No, Your Honor. What counsel refers to are two documents. One is Hartford's vocational analysis, and the other one is a position description that Epson issued about ten years before Ms. Dickens started. The vocational analysis was something that Hartford did to determine whether or not any other occupations would exist in the economy that would accommodate her based on her restrictions and limitations. There's a certain computer program that this is run through, and they find the closest matching occupation in order to compare it to. And in this particular case, and the record site is 271, for purposes of establishing the vocational demands, they determined that she could sit, stand in the capacity of a sedentary individual, such as a data processing manager. So it wasn't a determination she was a manager. It was a determination that her occupation was sedentary in nature for purposes of applying the restrictions and limitations to that occupation. Is that the only place in that vocational assessment that they use the word manager? I think so, but I'd have to check to be sure. I think there's about three or four references. I'm sorry. I was just looking at the record. Don't take your time on it, but I have it. Okay. There's about three or four references. Okay. Thank you, Your Honor, on that. With regard to the other issue I just wanted to raise briefly, and that has to do with a counsel's comment that Hartford had determined that she was a manager at the start and then they changed their mind. I would just invite the Court's attention to ERs 272 and 273, which show that on the same day that Hartford made the preliminary login to the computer system that her maximum benefit was $5,000 a month, they talked to Epson that same day, and Epson said, No, she's not a manager. She's not entitled to $5,000. So let me just, I mean, now Judge Trott has me really interested in the manager issue, which was a small issue to me at the time because the standard of review was more important. But so you must have had some reason to believe that Judge Fies was going to determine that she was a manager. Why wouldn't you put in the policy language that defines manager if it isn't consistent with the job position she had to disprove it right then and there for him? Why wouldn't you do that if it is inconsistent with her being a manager? The answer to the first part of the question is I was surprised that he would even consider that to be a viable issue. Did you try this case? I did. Okay. And I was prepared, and I was surprised. Well, right then and there, why didn't you say it doesn't fit the definition under the manager in the plan? And I will get that plan for you. Minions behind me, go get that plan. I have no minions behind me. I know, I know. You should appeal. You don't. But it really surprised me based on the fact that the employer, Epson, was the one who determines that issue and that Hartford did a full investigation of that and determined that that manager didn't apply, that it would even be an issue. Is there no definition of manager in your manager benefits policy? I don't know, but I assume there is, but I haven't seen it. I've seen the $3,500 one, which is the one that applies. If I had it and it was inconsistent with Judge Beasley's finding, I would have submitted it. Mostly for reconsideration on that point and submit the plan. Just to show that he was wrong. He might have come out different. It seems to me, Your Honor, with all due respect, that it's the employer that makes the determination as to whether or not their employees are managers or not. Then you're saying there's no definition of manager in the manager policy? Well, I can't say that. So the Fox decides once again whether the chickens are going to get a fair shake. Oh, there's no Fox here, Your Honor. I mean, Judge Beasley thinks Hartford's the Fox, but I'll tell you, the employer, Epson, is a disinterested party in terms of how much is paid in the benefit. And they're the ones who made the determination. It's their obligation to do so. All right. Thank you so much. Thank you, Your Honor. Does anyone feel they want a break before the next case? What's the next case? The next case is the Section 8. Yeah, let's take a short break. Okay. Now we'll take a short break. We'll be back in a few minutes and take the last case. And Kickland v. Hartford is submitted.
judges: Mosman, Trott, Wardlaw